## SANBORN v. BAY.†

### (Circuit Court of Appeals, Eighth Circuit. March 4, 1912.)

#### No. 3,660.

1. BREACH OF MARRIAGE PROMISE (§ 18*)—EVIDENCE—ADMISSIBILITY.
   In an action for breach of marriage promise, wherein plaintiff relied on services in attending to defendant's business at his request, it was proper to permit her to testify what she received for attending to a third person's matters at defendant's request and for his benefit.

   [Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. §§ 21-25, 48; Dec. Dig. § 18.*]

2. APPEAL AND ERROR (§ 1048*)—HARMLESS ERROR—EXCLUSION OF TESTIMONY.
   It was not reversible error to exclude a question asked a witness on the ground of indefiniteness, where counsel apparently made the question more definite and it was fully answered.

   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4140-4145, 4151, 4158-4160; Dec. Dig. § 1048.*]

3. APPEAL AND ERROR (§ 1058*)—CURE OF ERROR—EXCLUSION OF TESTIMONY.
   In an action for breach of marriage promise, any error in excluding testimony for defendant that the parties had talked about plaintiff's

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied May 17, 1912.

property affairs was cured by defendant's immediately following testimony at length concerning conversations between the parties about her business affairs and property.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4195, 4200–4206; Dec. Dig. § 1058.*]

**4. EVIDENCE (§ 471*)—CONCLUSIONS OF WITNESSES.**

In an action for breach of marriage promise, it was not error to exclude testimony by defendant as to what he had in mind in writing certain statements to plaintiff, on objection that the question called for conclusion, unless defendant communicated his intention to plaintiff.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

**5. APPEAL AND ERROR (§ 1058*)—CURE OF ERROR—EXCLUSION OF TESTIMONY.**

Any error in excluding a question asked a witness was cured by his immediately following testimony, which fully answered the question ruled out.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4195, 4200–4206; Dec. Dig. § 1058.*]

**6. BREACH OF MARRIAGE PROMISE (§ 21*)—EVIDENCE—ADMISSIBILITY.**

In an action for breach of marriage promise, it was proper to permit defendant to be asked: "If you did not intend to marry this girl, by these letters and by your own acts as you have detailed here, were you trying to play her, so as to get her time for your own benefit, and to get her influence to gather your aunt's property for you?"

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. §§ 28–30; Dec. Dig. § 21.*]

**7. BREACH OF MARRIAGE PROMISE (§ 31*)—DAMAGES—EXCESSIVENESS.**

It was not an abuse of discretion to refuse to set aside a $25,000 verdict for breach of marriage promise as being excessive, where plaintiff showed a pecuniary loss of more than $15,000, and testified that defendant told her he was worth more than $125,000, though he testified he was worth only $55,000.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. § 47; Dec. Dig. § 31.*]

In Error to the Circuit Court of the United States for the District of South Dakota.

Action by Ella R. Bay against James S. Sanborn. From a judgment for plaintiff (189 Fed. 521), defendant brings error. Affirmed. See, also, 194 Fed. 37.,

George A. Mahan (Charles P. Bates, Edwin R. Winans, A. R. Smith, and Dulany Mahan, on the brief), for plaintiff in error.

Frank R. Aikens (Joe Kirby and Harold E. Judge, on the brief), for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and DYER, District Judge.

ADAMS, Circuit Judge. This was an action at law to recover damages for a breach of promise of marriage. In addition to the usual and general damages resulting from such a breach, special damages occasioned by plaintiff's abandoning a lucrative business and rendering services and incurring expenses while attending to defendant's business at his request and in reliance upon his promise of marriage are claimed in the complaint. Upon issue joined the cause was tried

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to a jury, and a verdict and judgment for $25,000 rendered in favor of the plaintiff. In this writ of error, prosecuted by defendant, no complaint is made of any of the proceedings below, except certain rulings on objections to evidence. Most of these rulings are so manifestly correct or unprejudicial to the defendant that they were disposed of at the hearing, and to them we will not again refer.

[1] It is contended, however, that the court erred in permitting the plaintiff, who was a witness in her own behalf, to answer this question:

"What amount did you as a matter of fact get and receive for your services in Mrs. Carpenter's matters?"

In view of the immediately preceding testimony given by her, to the effect that she had been attending to Mrs. Carpenter's matters at the instance and request of the defendant and for his benefit, this question was clearly material and relevant to the issue created by the pleadings.

[2] Again, it is claimed the court erred in sustaining the plaintiff's objection to this question, put to the defendant when a witness in his own behalf:

"Did you talk with her [plaintiff] in regard to her attempting to sell this Carpenter ranch at the places Miss Bay mentioned in her testimony?"

This question was objected to as "too indefinite," etc. The objection was sustained, and counsel obviously made the question more definite; as the defendant immediately afterward testified in a narrative way quite fully on the subject involved in the question. He said:

"I have no memorandum which enables me to fix the exact times at which I have talked with Miss Bay. I have met her at Chicago, Milwaukee, Toledo, Chamberlin, Parker, and Los Angeles; also in St. Paul and Minneapolis. I am not able to give the exact dates at which I had these talks with her at these different places. We talked about my aunt's [Mrs. Carpenter's] business affairs, and about disposing of the Carpenter ranch and general things, and about the times and conditions."

This seems to be a full answer to the question objected to. If it was not, it was open to defendant's counsel to clear it up by further definite questions; but none appear to have been asked.

[3] Again, after the defendant had testified, in answer to the question whether he and plaintiff had talked about her property affairs, that "they had," the court, on motion of plaintiff's counsel, ordered the answer to be stricken out. We fail to see why this was done. The evidence, if immaterial, was quite inoffensive. But, however this may be, the error, if any, was cured by the defendant's narration immediately following the ruling, in which he testified at length of conversations between himself and plaintiff about her business affairs and property.

[4] Many letters were shown in evidence in which defendant wrote plaintiff that she would not have to work any more, or words to that effect. In view of these letters, defendant, when on the stand, was asked by his counsel this question:

"In these letters received in evidence I notice statements in regard to her not having to work, or she should not work. In writing those statements, what had you in mind?"

194 F.—23

This question was objected to as a conclusion, "unless he communicated it to her," and, there being no proffer of any further testimony to make it competent, the objection was sustained. In this we discover no error.

[5] The next question asked of the defendant, and objected to by plaintiff's counsel, and ruled out by the court, was this:

"What, if anything, did you say to Miss Bay, or she to you, regarding the amount she would realize from her profits on the option contracts, Exhibits A and B, if she made a sale?"

It would be useless to explain what was meant by these exhibits. Suffice it to say that, notwithstanding the objection, the question was fully answered in the narrative given by the witness immediately following. The question must have been so modified as to meet with the approval of the court, for the answer seems to be exhaustive.

[6] The next assignment of error is to the order of the court overruling defendant's objection to this question, put to him when on the witness stand on cross-examination by counsel for plaintiff:

"Mr. Sanborn, if you did not intend to marry this girl, by these letters and by your own acts as you have detailed here, were you trying to play her, so as to get her time for your own benefit, and to get her influence to gather your aunt's property for you?"

The court did not err in permitting this question to be asked. In view of the many protestations of love and affection which this record shows Sanborn made to the plaintiff, both in correspondence and personal interviews, we think the question was quite pertinent; and it seems to us that the defendant, instead of objecting to it, should have welcomed the opportunity to explain his conduct, if he had any explanation to make.

[7] Contention is made that the court erred in not setting aside the verdict as excessive. The record discloses that Judge Willard, who heard the motion for a new trial, gave a patient and exhaustive consideration to this contention, and among other things said:

"In the respects above noted this case is very unusual, and it may be doubted if a similar case ever occurred before where the woman, by reason of an engagement being broken, had actually suffered a pecuniary loss of more than $15,000. * * * In considering the damages in these cases, the amount of property which the defendant has can be taken into consideration. He testified that he was worth $55,000. She testified that he stated to her, when he made a will in her favor, that he was worth $125,000 and the value of his interest in the ranch besides. However that may be, the difference between her pecuniary loss of over $15,000 and the amount of the verdict, $25,000, is not, in my judgment, so excessive as to justify the court in interfering with the admitted province of the jury in such a case."

There certainly was no abuse of discretion in this ruling; and this conclusion precludes further consideration of it by us.

Discovering no prejudicial error in the proceedings below, the judgment is affirmed.